# IN THE SUPERIOR COURT OF DELAWARE

MARK BOISSONNEAULT,      )
      Plaintiff,        )
           )
  v.           )    Civ. Act. No. N24C-08-300 DJB
           )
DELAWARE PODIATRIC     )
MEDICINE, P.A.,       )
      Defendant.     )

Date Submitted:  May 21, 2026
Date Decided: June 30, 2026

**Memorandum Opinion**

*On Plaintiff's Motion for Summary Judgment –* **DENIED**

*Krista M. Reale, Esquire*, Margolis Edelstein, Wilmington, Delaware, attorney for Plaintiff

*Mark A. Denney, Esquire*, Baird, Mandalas, Brockestedt & Federico, LLC, attorney for Defendant

**BRENNAN, J.**

This breach of contract action arises from an employment agreement between Plaintiff Mark Boissonneault (hereinafter "Plaintiff") and Defendant Delaware Podiatric Medicine, P. A. (hereinafter "DPM"). Following a year of employment at DPM, Plaintiff was terminated. Plaintiff filed suit and alleges breach of contract, a violation of the Delaware Wage Payment & Collections Act (hereinafter "DWPCA"), and a retaliation claim under Workers' Compensation Law (hereinafter "WCL").[1] In its Answer, Defendant filed a counterclaim against Plaintiff, alleging breach of contract.[2]

Plaintiff moved for summary judgment pursuant to Superior Court Civil Rule 56, arguing he is entitled to judgment as a matter of law on his claims for breach of contract, violations of the DWPCA, and retaliation in violation of the WCL. Pending before the Court is Plaintiff's Motion for Summary Judgment.[3] Naturally, Defendant opposes. Because genuine issues of material facts exist with respect to all counts, Plaintiff's motion is **DENIED.**

I.    FACTS[4]

---

[1] Plaintiff's Amended Complaint ("Amended Complaint") at ¶ 13, D.I. 28.
[2] Defendant's Answer, Affirmative Defenses, and Counterclaims to Plaintiff's Amended Complaint, D.I. 30.
[3] D.I. 60.
[4] The facts that form the basis of this Opinion are gleamed from the undisputed facts from the 2024 Opinion, the pleadings, and documentary exhibits submitted by the parties.

This recitation of the facts is largely drawn from the Superior Court's December 9, 2024, Opinion on Motion to Dismiss previously filed and decided in this case.[5] Briefly, the parties entered into an employment agreement (hereinafter "the Agreement") providing for Plaintiff's employment at DPM for a three-year period.[6] The Agreement set Plaintiff's base salary, and in addition, if certain benchmarks were achieved, Plaintiff was eligible to receive a bonus. Any bonus earned was to be calculated according to a formula tied to renumeration.[7]

The Agreement further provided that Plaintiff's employment could only be terminated prior to the end of the agreed upon term for specific reasons. One such reason is for "due cause." Per the Agreement, a termination for due cause required DPM to follow certain procedural requirements, including providing written notice detailing the reasons for Plaintiff's termination.[8] The Agreement's definition of "due cause" includes, among other things, "a material breach of any Employee's obligations."[9]

Plaintiff was terminated for "due cause" after one year of employment at DPM.[10] Although DPM provided Plaintiff with written notice of termination via

---

[5] *Boissonneault v. Del. Podiatric Med., P.A.,* 2024 WL 5055538 (Del. Super. Dec. 9, 2024).
[6] *Id.* at *1.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.* at *2.

letter, the letter did not state the basis for his termination; instead, the reason was verbally stated to Plaintiff, which, in part, forms the basis of his breach of contract claim.[11] Additionally, Plaintiff's breach of contract claim alleges DPM breached the contract by terminating the Agreement early and failing to pay him $68,635.76 in bonus payments. DPM argues Plaintiff was in material breach of the Agreement, alleging he engaged in a pattern of workplace misconduct, including mistreatment of staff, "aggressive treatment of patients," and failure to disclose certain information.[12]

## II. PROCEDURAL HISTORY

Plaintiff filed the instant Motion for Summary Judgment on April 6, 2026.[13] DPM responded in Opposition on May 4, 2026.[14] Plaintiff's Reply was filed on May 8, 2026.[15] Oral argument was held on May 21, 2026.[16] This is the Court's decision **DENYING** summary judgment.

## III. STANDARD OF REVIEW

Under Superior Court Civil Rule 56, the moving party has the burden to demonstrate that "there is no genuine issue as to any material fact and that [it] is

---

[11] *Id.*
[12] *Id.*
[13] D.I. 60.
[14] D.I. 72.
[15] D.I. 73.
[16] D.I. 61.

entitled to a judgment as a matter of law."[17] If the moving party meets its initial burden, the burden then shifts to the non-moving party to show that material issues of fact exist.[18] All reasonable inferences are viewed in the light most favorable to the non-moving party. This Court will not grant summary judgment if there are genuine issues of material fact in dispute.[19]

## IV. ANALYSIS

Plaintiff moves for summary judgment alleging no material facts are in dispute and the record shows he is entitled to judgment as a matter of law on his claims. Defendant argues material facts are in dispute, which include its counterclaim breach of contract action, therefore summary judgment is not appropriate.

### A. Breach of Contract

Plaintiff's primary claim is that DPM breached the Employment Agreement by (1) terminating Plaintiff without cause; (2) failing to articulate the basis of Plaintiff's for cause termination in the Termination Letter; and (3) failing to pay

---

[17] Del. Super. Ct. Civ. R. 56(c).

[18] *Cumberland Mutual Fire Insurance v. Broan-Nutone, LLC.*, 2025 WL 1013540, at *2 (Del. Super. Mar. 31, 2025).

[19] *Heasley v. Allstate Property and Casualty Insurance Company*, 2022 WL 951261, at *2 (Del. Super. Mar. 28, 2022).

Plaintiff in accordance with terms of the compensation structure set forth under Section 10 of the contract.[20]

In response, DPM contends that Plaintiff committed a material breach by failing to comply with subparts b and d of the Agreement, and therefore argues that the threshold issue in this case is not whether DPM breached the contract by failing to articulate the basis of Plaintiff's for cause termination, but rather whether Plaintiff's material breach of the Agreement discharged DPM's duty to continue performing.[21] DPM maintains that Plaintiff was in breach because he both failed to devote his "best skill to the care and rendering of professional podiatry services to such patients as [DPM] shall entrust to [Plaintiff]" and failed to pledge his "careful avoidance of all personal acts, habits, and usages which might injure in any way, directly or indirectly, the professional or personal reputation of [DPM]"[22] Therefore, DPM posits genuine issues of fact remain concerning the materiality of the contract, which are questions of fact best suited for a jury.[23]

A breach of contract arises when "there is a contractual obligation, a breach of that obligation, and damages."[24] A contract can be nullified where a party to the

---

[20] D.I. 60 at 13, 15.
[21] D.I. 72 at 6-7.
[22] D.I. 30 at 18-19; D.I. 72 at 6-7.
[23] *Id.* at 7.
[24] *Broadkill Beach Builders, LLC v. Frampton*, 2025 WL 1804011 at *3 (Del. Super. Jun. 30, 2025).

contract substantially fails "to live up to the material terms of [the] valid contract."[25]

A material breach "acts as a termination of the contract going forward, abrogating any further obligations to perform by the non-breaching party."[26] To justify abandoning ones performance because of a material breach by another party, one must show that "the failure of performance on the part of the other go to the substance of the contract."[27] Materiality is not a mere failure to comply with one aspect of the contract, but instead arises when "a party fails to perform a substantial part of the contract or one or more of its essential terms or conditions."[28]

Plaintiff contends DPM materially breached the Agreement by terminating Plaintiff without due cause and failing to specify the grounds upon which his termination was based in the written termination notice. Whether Defendant failed to comply with the terms set forth under the Agreement concerning the notice constitutes a material breach is a genuine issue of material fact and one not appropriately resolved at the summary judgment stage.[29]

---

[25] *DeMarie v. Neff*, 2005 WL 89403, at *4 (Del. Ch. Jan. 12, 2005).
[26] *Cook Children's Health Care Sys. v. Cornerstone On Demand, Inc.*, 2019 WL 6903999, at *1 (Del. Super. Dec. 18, 2019) (citing *Carey v. Estate of Myers*, 2015 WL 4087056, at *20 (Del. Super. July 1, 2015)).
[27] *DeMarie*, 2005 WL 89403, at *4 (citing *Saienni v. G & C Capital Group, Inc.,* 1997 WL 363919, at *3 (Del. Super. May 1, 1997) (internal citations omitted)).
[28] *Zeisloft v. Mergenthaler*, 2015 WL 3609914, at *3 (Del. C.P. June 8, 2015) (citing 23 Samuel Williston & Richard A, Lord, A Treatise on the Law of Contracts § 63:3 (4th Ed. 2002) (internal citations omitted)).
[29] *Grottenthaler*, 2022 WL 17249642, at *5 (internal citations omitted).

The same is true for Plaintiff's claim that DPM breached Section 10 of the Contract for failing to compensate Plaintiff under the bonus compensation structure outlined therein. Section 10 of the Contract provides:

> Both parties have agreed that once [DPM] receives renumeration above $270,000 in one year (including DME, x-ray and ancillary revenue received during process of the normal office cycle) the pay will increase as a bonus structure in addition to Employees base salary to 35% of any excess moneys received.[30]

Plaintiff argues the patient billing records, in conjunction with Dr. Hanlon's deposition testimony acknowledging Plaintiff raised payment discrepancies, demonstrate DPM breached the contract by failing to pay him compensation owed under Section 10. While not specifically addressed by DPM in its Reply, the record demonstrates a genuine issue of fact exists regarding this issue, as it is contested. At argument, much was discussed regarding the differing interpretations of the record evidence on this point.

Specifically, Section 10 provides that if DPM received an excess of $270,000 in renumeration for services Plaintiff performed in one year, Plaintiff was entitled to receive a bonus payment of 35% of the excess amount generated. Plaintiff maintains the records and testimony show that DPM was in breach and failed to pay. However, Dr. Hanlon testified that Plaintiff generated fraudulent reports to support the false assertion that he was owed money. Dr. Hanlon

---

[30] D.I. 60, Ex. A.

explained that, "[Plaintiff] was producing these fraudulent reports and asserting them as true . . . and [would] show me these reports that basically depicted how much money he thought he was bringing in on a monthly basis."[31]

Consequently, a genuine issue of material fact precludes summary judgment on the breach of contract claim. Thus, this is a question for the jury and not a question that demands judgment as a matter of law.

### B. DWPCA

With respect to Count II, Plaintiff argues judgment as a matter of law is appropriate on his DWPCA violation claim, as DPM failed to compensate Plaintiff pursuant to the compensation terms under the Agreement. Per Plaintiff the issue is simple: he was an employee and the contract was performed and executed in Delaware.[32] In response, DPM contends the DWPCA does not apply to bonus compensation payments.[33] Alternatively, DPM argues that Plaintiff has failed to demonstrate that he was wrongfully terminated and thus, DPM was unreasonable in subsequently denying future payments, which is a question best suited for the fact-finder.[34]

---

[31] D.I. 60, Ex. B, 28:23-24, 29:1-11.
[32] *Id* at 17.
[33] D.I. 72 at 8.
[34] *Id*.

Section 1101(a)(4) of the DWPCA limits recovery to "a person suffered or permitted to work by an employer in this State."[35]   Under the DWPCA, wages are defined as "compensation due to an employee by reason of the employee's employment, payable in legal tender of the United States or check or bank draft convertible into cash on demand at full face value, subject to such deductions, charges, or allowances."[36]   The statutory language does not specifically address whether bonus payments constitute recoverable wages under the Act, and instead broadly defines wages as "compensation due to an employee."   However, in *Gallagher v. E.I. DuPont De Nemours & Co*, this Court determined that the DWPCA does not apply to wage claims stemming from an alleged failure to pay "additional payments that are not part of the regular recurrent compensation for services rendered by the employee."[37]   It is worth noting that the Gallagher Court ruled prior to the legislature's amendment.   The Act's statutory language was amended in 2022, to its current form which defines wages more broadly.[38]

Regardless, the original Act's language, which defined wages as "compensation for labor or services rendered by an employee, whether the amount

---

[35] *SerVaas v. Ford Smart Mobility LLC*, 2021 WL 3779559, at *5 (Del. Ch. Aug. 25, 2021) (citing 19 *Del. C.* § 1101(a)(3)).
[36] 19 *Del. C.* § 1101(a)(8).
[37] *Gallagher v. E.I. DuPont De Nemours & Co.*, 2010 WL 1854131, at *7 (Del. Super. Apr. 30, 2010).
[38] *Id.*

is fixed or determined on a time, task, piece, commission or other basis of calculation,"[39] was not significantly changed. Although the statute has been amended since the *Gallagher* Court issued their opinion, the modifications are relatively insubstantial and do not support a rational basis to undermine the Court's analysis and subsequent holding, that bonus compensation are not recoverable wages under the DWPCA.

In this case, Plaintiff has standing to assert a claim under the DWPCA because he was permitted to work by DPM, an employer in this State. Under the terms of the Agreement, in addition to Plaintiff's base salary, if certain benchmarks were met, Plaintiff was eligible to receive 35% of the excess amount of renumeration payments exceeding $270,000. If these payments are considered bonus payments, as separate and distinct from Plaintiff's base wages paid for work and services performed as an employee of DPM, they are not recoverable wages under the DWPCA.

However, a factual issue remains regarding whether Plaintiff satisfied the required condition to receive the bonus compensation. A cross-motion was not filed with respect to whether this claim should survive, therefore, the issue of whether the condition precedent was met will be presented to the jury. Dr. Hanlon testified that Plaintiff generated false billing reports and wrongfully claimed he was entitled to additional payments, which creates a genuine issue of material fact. Whether the

---

[39] 19 *Del. C.* 1953, § 1101(a) (5).

jury will be permitted to decide whether a violation of the DWPCA occurred is a question that Court and counsel will revisit at the appropriate time. At this time, however, summary judgment is improper.

### C. RETALIATION UNDER WCL

Finally, Plaintiff moves for summary judgment on his retaliation claim. Plaintiff maintains he has successfully established a valid claim for workers' compensation retaliation because he requested workers compensation benefits after he sustained a needle stick injury, following which, DPM terminated his employment. As a result, Plaintiff suggests this Court should find, as a matter of law, that a causal connection has been proven to show his termination was in retaliation for DPM paying out for his injury pursuant to the WCL. In response, DPM argues Plaintiff's workers' compensation claim had no bearing on his termination, which was wholly based on unrelated conduct.[40]

In order to establish a *prima facie* claim for workers' compensation retaliation, Plaintiff must show that: "(1) Plaintiff exercised rights under the Workers' Compensation Act; (2) [his employer] took an adverse employment action against [him]; and (3) there was a causal connection between Plaintiff's exercise of rights and the adverse employment action."[41] Plaintiff's mere establishment that a

---

[40] D.I. 72 at 8-9.
[41] *Weller v. Morris James*, 2020 WL 2511118, at *2 (Del. Super. May 14, 2020) (internal citation omitted).

workers' compensation claim was filed and afterwards his employment was terminated is not sufficient evidence to establish, as a matter of law, that there is a causal connection between the two events. Plaintiff argues that his termination was a direct result of the claim filed, while DPM retorts that they terminated Plaintiff because of unrelated conduct. Although a factual dispute exists on this issue, "[w]hen a claim lacks legal merit, factual disputes become immaterial to the summary judgment analysis."[42] In *Emmert v. Prade*, the Court of Chancery determined that "factual disputes did not preclude summary judgment, where there [is] no cognizable legal claim underlying them."[43] The Court further explained, "while it is true that summary judgment is inappropriate when there are genuine issues of material fact, this standard assumes there is an underlying legal claim."[44]

In this case, Plaintiff's claim is entirely premised on the conclusory allegation that the timing of his workers' compensation claim and subsequent termination establish that DPM retaliated against him. It is illogical to conclude, solely based on timing, that DPM retaliated against Plaintiff because he filed a workers' compensation claim. There has been no evidence offered to support such a connection. Moreover, by Plaintiff's own omission, DPM provided Plaintiff with guidance and assistance in filing this claim. Namely, DPM initially instructed him

---

[42] *Emmert v. Prade*, 711 A.2d 1217 (Del. Ch. 1997).
[43] *Id.*
[44] *Id.*

to file a claim through "Bayhealth's Workers Compensation policy" and then directed him to file a claim through his own insurance policy after Bayhealth informed Plaintiff of his ineligibility under Bayhealth's policy.[45] Plaintiff subsequently filed a claim for his injury through DPM's policy, which they paid in full a few weeks after.[46] Such efforts demonstrate an effort to facilitate, as opposed to impede, the claims process and undermine Plaintiff's theory that DPM retaliated against him.

Thus, Plaintiff's cause of action under the WCL lacks legal merit and had a cross-motion for summary been filed, the Court would have granted it. It will not *sua sponte* dismiss the claims. It is worth noting that "where a claim isn't legally cognizable, judgment as a matter of law may be entered irrespective of any 'immaterial factual disputes.'"[47] This issue will be presented to the jury, and it will be the jury's job to decide whether Plaintiff can meet its burden of proof.

### D. DAMAGES

Finally, Plaintiff argues his entitlement to liquidated damages for backpay and lost wages has been demonstrated to such an extent that judgment as a matter of law

---

[45] D.I. 28 at ¶¶ 58-60.
[46] D.I. 60 at 18, Ex. E at plaintiff00098.
[47] *Wu v. Wang*, 2026 WL 560320, at *2 (Del. Super. Feb. 26, 2026) (citing *Brzoska v. Olson*, 668 A.2d 1355, 1365 (Del. 1995)).

is required.[48]  Specifically, Plaintiff contends the Agreement establishes a clear and objective formula for calculating Plaintiff's bonuses' and seeks $68,635.76 in unpaid bonuses to which he is entitled.  As explained above, DPM refutes Plaintiff's assertion that he is entitled to unpaid bonuses entirely, which creates a genuine issue of material fact.  Therefore, a triable issue of fact remains, and summary judgment is improper.

## V.    CONCLUSION

For the foregoing reasons Plaintiff's Motion is **DENIED.**  Given the factual and legal issues raised in this ruling, the Court finds that it is in the interest of justice that the parties return to mediation, with all parties present and participating in good faith.   This additional mediation must be completed within thirty (30) days of this Order.

**IT IS SO ORDERED.**

_____
Danielle J. Brennan, Judge

---

[48] D.I. 60 at 21.